**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: | Hon. Faith S. Hochberg, U.S.D.J. |
| BASIL PANDOLFELLI. | **OPINION** |
| Debtor. | Date: February 14, 2012 |
| JPMORGAN CHASE BANK, N.A., | |
| Appellee, | |
| v. | Civil Case No. 11-5179 (FSH) |
| BASIL PANDOLFELLI, | |
| Appellant. | |
| ALL POINTS CAPITAL CORP., | |
| Appellee, | |
| v. | Civil Case No. 11-5231 (FSH) |
| BASIL PANDOLFELLI, | |
| Appellant. | |
| THE PROVIDENT BANK, | |
| Appellee, | |
| v. | Civil Case No. 11-7031 (FSH) |
| BASIL PANDOLFELLI, | |
| Appellant. | |

1

**HOCHBERG, District Judge:**

This matter comes before the Court upon three appeals filed by a bankruptcy debtor, Basil Pandolfelli. All three appeals challenge the entry of default, the entry of default judgment, and the entry of default judgment without a proof hearing against Pandolfelli by the bankruptcy court. The default judgments were entered in favor of JP Morgan Chase Bank, N.A. ("Chase"), All Points Capital Corp. ("All Points"), and The Provident Bank ("Provident") (collectively, "Creditors"). Because the issues raised by all three appeals overlap considerably, all three appeals are addressed together herein. The Court has reviewed the submissions of the parties and considered the motion on the papers in accordance with Fed. R. Civ. P. 78.

**I.     BACKGROUND**

Pandolfelli is the sole shareholder, Chairman, and CEO of RCA Capital Corp. ("RCA"). RCA was in the business of financing the acquisition and/or leasing of equipment for borrowers and customers in, *inter alia*, the graphic arts and converting business. RCA separately entered into secured credit agreements with the Creditors. Each of the secured credit agreements provided that it would be secured by a first priority perfected security interest and lien in defined collateral. RCA represented in each security agreement that no prior or equal liens had been granted with respect to the collateral pledged to each creditor and Pandolfelli entered into guaranty agreements with each creditor. After RCA fell into default the Creditors filed actions against RCA in New Jersey state court, which were consolidated.

The Creditors then filed an order to show cause seeking specific performance of their rights under the respective security agreements. In response, RCA and Pandolfelli declared bankruptcy. The Creditors then separately filed adversary proceedings against Pandolfelli in response objecting to the dischargeability of Pandolfelli's obligations under the guaranty

agreements pursuant to 11 U.S.C. § 523.[1]  Chase filed its adversary complaint on July 20, 2009; All Points and Provident filed their adversary complaints on July 21, 2009.  Pandolfelli was represented in his bankruptcy proceeding and his counsel requested an extension of time to respond to the adversary complaints.  All Points and Provident granted brief extensions.

The time for Pandolfelli to answer the Chase complaint expired on August 22, 2009, and the time for Pandolfelli to answer the Provident and All Points complaints expired on September 8, 2009 and September 9, 2009, respectively.  The Creditors requested the entry of default on separate dates in September 2009.  Default was entered against Pandolfelli in the Chase and All Points proceedings on December 10, 2009, and Pandolfelli filed a motion to vacate default in all three proceedings on December 14, 2009.  Because default had not been entered in the Provident proceeding, the Bankruptcy Court construed the motion to vacate default as a motion for extension of time to answer.  The Bankruptcy Court denied those motions in a letter opinion (the "September 14, 2010 Opinion").  Pandolfelli then sought leave to take interlocutory appeals.  Judge Martini denied the motions for leave to appeal on March 14, 2011.  Default was then entered in the Provident proceeding, and default judgments were subsequently entered against Pandolfelli in each proceeding.[2]  Pandolfelli then filed a motion to vacate each default judgment and to compel a proof hearing.  The bankruptcy court denied the motions and Pandolfelli timely appealed.

---

[1] In addition to the Creditors addressed in this appeal, an adversary proceeding was also filed against Pandolfelli by the Pitman Company.  The four adversary proceedings are: *JPMorgan Chase Bank, N.A. v. Pandolfelli*, (DHS) Adv. Pr. No. 09-2068; *The Provident Bank v. Pandolfelli*, (DHS) Adv. Pr. No. 09-2070; *All Points Capital Corp. v. Pandolfelli*, (DHS) Adv. Pr. No. 09-2072; and *Pitman Company v. Pandolfelli*, (DHS) Adv. Pr. No. 09-2075.

[2] Until this point, the adversary proceeding filed by the Pitman Company had proceeded in a substantially similar manner to the other proceedings.  However, that proceeding was dismissed for failure to prosecute when the Pitman Company failed to seek a default judgment against Pandolfelli after his motions for leave to take an interlocutory appeal were denied.

## II.     STANDARD OF REVIEW

The standard of review for the bankruptcy court's refusal to vacate the default and default judgment is abuse of discretion. *Jacobson v. Secivanovic (In re Secivanovic)*, Nos. 04-2381, 04-2466, 2005 WL 1583357, at *1 (3d Cir. July 7, 2005).  The decision not to hold a hearing is likewise reviewed for abuse of discretion. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).  Legal determinations are reviewed *de novo*, and factual determinations by the bankruptcy court are reviewed for clear error. *Ferrara & Hantman v. Alvarez (In re Engel)*, 124 F.3d 567, 571 (3d Cir. 1997).  "[T]he clearly erroneous standard is fairly stringent: 'It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data.'" *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies,* 57 F.3d 1215, 1223 (3d Cir. 1995) (quoting *Hoots v. Pennsylvania*, 703 F.2d 722, 725 (3d Cir. 1983)).

## III.    DISCUSSION

Pandolfelli contends that the Bankruptcy Court erred: (1) when it denied his motion to vacate the entry of default against him; (2) when it denied his motion to vacate the entry of default judgment against him; and (3) when it entered default judgment against him without first conducting a proof hearing.  Because the same test is used to determine whether to set aside both entry of default and entry of default judgment, *see Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982), the first two aspects of Pandolfelli's appeal may be discussed simultaneously.

A.     **Entry of Default and Default Judgment**

When considering an application to set aside a default, or a default judgment, a court "must consider the following three facts: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct." *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985).

1.     **A Meritorious Defense**

"The threshold question is whether the defendant has alleged facts which, if established at trial, would constitute a meritorious defense to the cause of action." *Resolution Trust Corp. v. Forest Grove, Inc.*, 33 F.3d 284, 288 (3d Cir. 1994) (internal quotations omitted). The Third Circuit has observed that "there would be no point in setting aside the default judgment. . . if [the defendant] could not demonstrate the possibility of his winning." *U.S. v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). "[A] defendant does not have the right to have a default judgment set aside automatically upon alleging a defense. Rather, we impose a more stringent standard which requests that a defendant seeking to set aside a default judgment set forth with some specificity the grounds for his defenses." *Harad v. Aetna Cas. and Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988). "The showing of a meritorious defense is accomplished when allegations of defendant's answer, if established on trial, would constitute a complete defense to the action." *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (internal quotations omitted). After reviewing Pandolfelli's proposed answers, the bankruptcy court concluded that they failed to set forth a meritorious defense. *See, e.g.*, September 14, 2010 Opinion at 7 (The proposed answer set forth "nothing more than conclusory statements and denials which fail to establish a meritorious defense").

The Bankruptcy Court was correct. The proposed answers essentially state a series of legal conclusions, unaccompanied by factual allegations that could "constitute a complete defense to the action." *$55,518.05 in U.S. Currency*, 728 F.2d at 195. Pandolfelli admits that he is the chairman, CEO and sole shareholder of RCA, that the loan documents underlying his obligations are valid, and that the loans at issue were made. All Points Complaint, All Points Appellant R. 1, at ¶¶ 13-23; Proposed Answer, All Points Appellant R. 3, Ex. A at ¶¶ 13-23.[3] Pandolfelli admits that RCA defaulted under the loan documents and admits that he did not perform his obligations pursuant to the accompanying personal guaranty agreements but states the legal conclusion that any breaches of those documents were solely by RCA. All Points Appellant R. 1, at ¶¶ 50-66; All Points Appellant R. 3, Ex. A at ¶¶ 50-66. Pandolfelli further admits that the Creditors retained Weiser LLP to examine RCA's books and records, and denies knowledge or information regarding the findings of Weiser, but does not deny the actual findings. All Points Appellant R. 1 at ¶¶ 69-78; All Points Appellant R. 3, Ex. A at ¶¶ 69-78.

Pandolfelli denies the specific allegations of fraud by contending that he was not responsible for RCA's books and records and that he personally did not make any material misrepresentations relied upon by All Points, Chase, or Provident. *Id*. at ¶¶ 70-71, 75-79. He denies converting RCA's assets by directing RCA to pay his personal expenses based on his contention that payments for personal items were properly disbursed in response to loans made by Pandolfelli to RCA. *Id.* at ¶ 80. He then flatly denies summary allegations of fraud, conversion, embezzlement, and willful and malicious injury of creditors. *Id*. at ¶¶ 81-105. In effect, Pandolfelli denies each of the legal conclusions contained in the adversary complaint. However he does not deny any of the core factual allegations establishing that Pandolfelli

---

[3] The proposed answers in the Chase and Provident proceedings contain substantially similar admissions and denials. *See* Chase Appellant R. 3, Ex. A; Provident Appellant R. 3, Ex. A.

directed RCA to pledge the same collateral to multiple lenders with the intent to deceive, or offer any factual allegations of any kind that if proven, "would constitute a complete defense to the action." *$55,518.05 in U.S. Currency*, 728 F.2d at 195.

Pandolfelli has also acknowledged the accuracy of RCA's schedules, which set forth the obligations of RCA and Pandolfelli to the Creditors. Chase Appellee R. 15. The Creditors have established their claims by competent evidence through their respective proofs of claim, which mirror the allegations of the adversary complaints, and affidavits in support of entry of default judgment. *See Crédit Agricole Corp. v. Am. Home Mortg. Holdings (In re Am. Home Mortg. Holdings)*, 637 F.3d 246, 256 (3d Cir. 2011) ("'A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.'") (quoting Fed. R. Bankr. P. 3001(f)).

The lack of a meritorious defense alone is sufficient to support the bankruptcy court's decision to deny Pandolfelli's motions to vacate the entry of default and the default judgment against him. *See e.g., New Forum Publishers v. Nat'l Org. for Children*, No. 02-1737, 2003 WL 22016941 (E.D. Pa. July 1, 2003), at *10 (quoting *Resolution Trust Corp. v. Forest Grove,* 33 F.3d at 288). However, because some courts have applied a more lenient standard with respect to the entry of default, the Court notes that each of the other factors also supports the decision of the Bankruptcy Court.

### 2. Prejudice to the Creditors

Pandolfelli argues that there was no demonstration of prejudice to any of the Creditors as a result of his failure to timely answer the adversary complaints. Prejudice includes "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." *Feliciano*, 691 F.2d at 657. The Bankruptcy Court found as a matter of fact that

each of the Creditors had been prejudiced by Pandolfelli's delay in answering because it substantially increased the potential for loss of evidence and fraud. In the September 14, 2010 Opinion addressing all three of these cases, the court stated:

> [T]he substantial delay in answering the Plaintiffs' allegations has substantially increased the potential for loss of available evidence, or fraud. These cases are not simply legal disputes regarding the existence or extent of a debt. Rather, each Plaintiff has alleged with specificity acts of actual fraud, including the falsification of books and records and the diversion of millions of dollars away from creditors and into Defendant's pocket (citation omitted). As counsel for Chase noted, 'Defendant may have used the past four months to further cover his tracks and divest himself of material assets' (citation omitted). Consequently, the Court finds that, given the nature of the allegations in the respective complaints, Defendant's lengthy delay in responding may have prejudiced Plaintiffs by allowing time to destroy evidence or conceal assets.

September 14, 2010 Opinion at 4-5. The Court went on to conclude:

> In light of these serious allegations, the Court finds a strong potential that the Defendant could have used the interceding months to conceal or destroy evidence or to conceal or squander assets. Thus, the Court finds that the four-month delay in answering the allegations, which was caused entirely by the Defendant's willful refusal to participate in this litigation, presents a high probability of prejudice to the Plaintiffs. [4]

*Id.* at 7.

This factual determination by the Bankruptcy Court should be upheld unless it is "'completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data.'" *Fellheimer, Eichen & Braverman,* 57 F.3d at 1223 (quoting *Hoots*, 703 F.2d at 725). The Bankruptcy Court's finding that Pandolfelli's delay in answering increased the potential for loss of evidence and fraud is amply supported by the records of the RCA and Pandolfelli bankruptcies, which establish that RCA repeatedly fraudulently pledged the same collateral to multiple creditors over a substantial period of time. *See* All Points Appellant R. 15, at 5-6; Chase Appellant R. 13, at 5; Provident Appellant

---

[4] The Court notes that it appears that all of the RCA business records were subsequently lost by the warehouse hired by the Trustee. Provident Appellant R. 15, Certification at 1.

R. 17 at 5.  For instance, the affidavits filed by the Creditors demonstrate that certain equipment was pledged as collateral to more than one bank.  *See, e.g.*, All Points Affidavit of Amount Due, Appellant R. 9, at 16-17.  Accordingly, the Bankruptcy Court's factual finding regarding the potential prejudice to the Creditors is not clearly erroneous and will be upheld.

### 3. Culpable Conduct

"[T]he standard for 'culpable conduct' in this Circuit is the 'willfulness' or 'bad faith' of a non-responding defendant." *Hritz*, 732 F.2d at 1182.  Culpable conduct "include[s] acts intentionally designed to avoid compliance with court notices." *Id.* at 1183.

Pandolfelli argues that his failure to timely answer was not willful, because he was proceeding *pro se* and could not be expected to properly craft an answer that does not contain improvident admissions and is compliant with the Bankruptcy Rules of Procedure, particularly in a case with millions of dollars at stake.  Pandolfelli contends that the findings of the bankruptcy court that he had no real excuse and delayed answering in bad faith were unfounded and clearly erroneous because the delay was a product of his need to engage counsel and secure funds to do so while bankrupt and divorcing.  Pandolfelli also notes that he sought an extension of time to answer in each adversary proceeding, suggesting that he was not indifferent to his obligations.

However, Pandolfelli was represented in his bankruptcy case and had the opportunity to consult with counsel about the filing of an answer.  Further, it is undisputed that Pandolfelli and his counsel were properly served with the adversary complaints and that Pandolfelli was fully apprised of his obligation to answer the complaints.  The Bankruptcy Court appropriately rejected Pandolfelli's claim that he could not answer the adversary complaints until he engaged counsel to his satisfaction, correctly distinguishing delay caused by inadvertence from Pandolfelli's intentional decision not to respond to a complaint.  *See e.g.*, *Coltec Indus., Inc. v.*

9

*Hobgood*, 280 F.3d 262, 274 (3d Cir. 2002) ("[C]ourts have not looked favorably on the entreaties of parties trying to escape the consequences of their own counseled and knowledgeable decisions.") (internal quotations omitted).

In the September 14, 2010 Opinion denying Pandolfelli's motion to vacate the defaults and extend the time to answer in these proceedings, the Bankruptcy Court stated:

> Because the Defendant's only proffered reason for the delay in answering the complaints is that he preferred not to defend these suits until he could afford counsel of his choice, the Court finds that the delay was entirely within his control. As such, the Court finds that this element of the Pioneer analysis weighs in favor of *willful* neglect rather than *excusable* neglect.

*See* September 14, 2010 Opinion at 5. When denying Pandolfelli leave to take interlocutory appeals, Judge Martini agreed with this aspect of the Bankruptcy Court's analysis noting:

> [A]ll Appellant is really claiming is that the divorce proceeding impeded his ability to access the funds he needed to retain counsel of his choice . . . . [T]he Bankruptcy Court appropriately found that these circumstances do not even provide an excuse for [Pandolfelli's] failure to answer the complaint or otherwise plead, let alone constitute "exceptional circumstances."

*Pandolfelli v. JP Morgan Chase Bank, N.A.*, Nos. 10-5366, 10-5390, 10-5367, 2011 WL 915132, at *3 (D.N.J. Mar. 14, 2011). The Bankruptcy Court's culpability analysis is not clearly erroneous. Pandolfelli does not claim to have retained counsel until months after his deadline to answer had passed in each proceeding. It is undisputed that Pandolfelli was represented in his Chapter 7 proceeding and was aware of his obligation to answer the adversary complaints. Even after retaining counsel Pandolfelli did not take immediate action, instead waiting to file a proposed answer until after default had been entered against him in the Chase and All Points proceedings. When default was subsequently entered in the Provident proceeding, Pandolfelli again did not respond until after Provident had moved for default judgment and the judgment was entered against him by the Bankruptcy Court clerk. *See* Provident Appellant R. 11. Under

these circumstances, the Bankruptcy Court's factual findings regarding Pandolfelli's culpability are well founded and should not be disturbed.

**B.      Entry of Default Judgment without a Hearing**

A proof hearing is not mandatory; a trial court has broad discretion and is entitled to rely on the record before it in entering judgment. *See, e.g.*, *Pope v. U.S.*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."). *See also General Elec. Capital Corp. v. Clifton Radiology Assocs., LLC*, No. 05-4867, 2007 WL 1791267, at *3-5 (D.N.J. 2007) (concluding that entering a judgment without conducting an evidentiary hearing is within the discretion of the court).  The court may, however, conduct a hearing when necessary to "determine the amount of damages," Fed. R. Civ. P. 55(b)(2), to "establish the truth of any allegation by evidence," Fed R. Civ. P. 55(b)(3), or to "investigate any other matter." Fed. R. Civ. P. 55(b)(4).[5]  A court's decision not to hold a hearing is reviewed for abuse of discretion. *See Rainey v. Diamond State Port Corp.*, 354 Fed. App'x 722, 724 (3d Cir. 2009).  In the Chase hearing on Pandolfelli's motion to set aside default judgment,[6] the Bankruptcy Court specifically concluded that no evidentiary hearing was necessary, based in part on its extensive experience with the RCA and Pandolfelli bankruptcies.  *See* Tr. of June 7, 2011 Hearing, Chase Appellant R. 13, at 5-6, 11.

Pandolfelli contends that the bankruptcy court improperly permitted the entry of a default judgment without a hearing.  His arguments can be divided into two objections, which will be

---

[5] Fed. R. Civ. P. 55 governs defaults in adversary proceedings in bankruptcy court.  Fed. R. Bankr. P. 7055.

[6] Pandolfelli's counsel indicated he did not intend to attend a hearing on his motion to set aside default judgment in the All Points proceeding.  *See* Aug. 15, 2010 Opinion, All Points Appellant R. 15, at 4.

11

considered in turn: 1) that the unchallenged facts did not constitute a cause of action, and 2) that the amount owed was not adequately demonstrated by the filings.

### 1. The Facts Constitute a Legitimate Cause of Action

For a court to enter default judgment, "the unchallenged facts [must] constitute a cause of action, since a party in default does not admit mere conclusions of law." *Directv v. Asher*, No. 03-1969, 2006 WL 680533, at *2 (D.N.J. Mar. 14, 2006). Once a party has defaulted, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (internal quotations omitted) (citing *Thomas v. Wooster*, 114 U.S. 104 (1884)).

The Creditors each sought to have their debts exempted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) by reason of: (1) fraud by Pandolfelli, (2) embezzlement or larceny by Pandolfelli, and (3) willful and malicious injury by Pandolfelli. "Exception to discharge, based upon 11 U.S.C. § 523(a)(2)(A) requires a showing of actual fraud, not merely fraud that would be implied in law." *Shaw v. Santos (In re Santos)*, 304 B.R. 639, 651 (Bankr. D.N.J. 2004).

> Actual fraud for § 523(a)(2)(A) purposes is proved by establishing each of the following elements: (1) that the debtor obtained money, property or services through a material misrepresentation; (2) that the debtor, at the time of the transaction, had knowledge of the falsity of the misrepresentation or reckless disregard or gross recklessness as to its truth; (3) that the debtor made the misrepresentation with intent to deceive; (4) that the plaintiff reasonably relied on the representation; and (5) that the plaintiff suffered loss, which was proximately caused by the debtor's conduct.

*Id*. *See also Starr v. Reynolds (In re Reynolds)*, 193 B.R. 195, 200 (D.N.J. 1996). Because "a debtor will rarely, if ever, admit that deception was his purpose," "intent to deceive can be inferred from the totality of the circumstances, including the debtor's reckless disregard for the truth." *Insurance Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1118-19 (3d Cir. 1995).

Pandolfelli challenges the adequacy of the showing of actual fraud in all three cases. Pandolfelli argues that the allegations of fraud in the respective complaints are not particularized in any way, some of the allegations are made upon information and belief, and the applications for default judgment are based upon incompetent supporting materials. Pandolfelli contends that the five elements of fraud are not established, that the allegations of fraud are not definitive enough because they simply suggest that "it appears" or is "likely" there was fraud, and that how the entire amount claimed by each creditor is because of Pandolfelli's misconduct is never established. He argues that the factual allegations do not sufficiently demonstrate that he directed the misconduct attributed to RCA. He also contends that although the bankruptcy court stated that Pandolfelli could conceivably be held liable for RCA's actions under an alter ego theory, no facts were adduced to establish this theory, nor was it pleaded in the complaints.[7]

Because the factual allegations in the complaint are accepted as true, *Comdyne*, 908 F.2d at 1149, the only issue is whether those facts, along with the evidence in the record, constitute claims. In declining to set aside default judgment, the Bankruptcy Court conducted a diligent analysis of the validity of the claims in each case, a review of which demonstrates that entry of default judgment was warranted.

The Bankruptcy Court first identified the five element test to bar discharge under 11 U.S.C. § 523(a)(2)(A). The Bankruptcy Court concluded that elements (1), (4), and (5) of the test were undisputed, because RCA pledged the same collateral to several lenders, including the Creditors, causing them to suffer losses as a result of material misrepresentations. *See* All Points

---

[7] Additionally, in the All Points proceeding, Pandolfelli argues that All Points may have included a claim that is not within the scope of the personal guaranty agreement he executed. However, this argument was not raised before the Bankruptcy Court and has therefore been waived. *See Int'l Fin. Group v. Kaiser Group Int'l (In re Kaiser Group Int'l)*, 399 F.3d 558, 565 (3d Cir. 2005) (stating "the general rule that when a party fails to raise an issue in the bankruptcy court, the issue is waived and may not be considered by the district court on appeal").

13

Appellant R. 15, at 5-6; Chase Appellant R. 13, at 5; Provident Appellant R. 17, at 5. That conclusion is amply supported by the record. First, an analysis conducted by Weiser on behalf of the three Creditors demonstrated that collateral was pledged to multiple lenders, and that the Creditors provided financing to Pandolfelli and RCA based on the pledged collateral. *See, e.g.*, Chase Appellant R. 1, ¶¶ 41-48. Second, the proofs of claim filed by the three Creditors in these cases attest to the fact that collateral was pledged to multiple lenders. *See, e.g.*, Chase Appellant R. 11, Ex. H. Finally, the proofs of claim filed in the RCA bankruptcy, which Pandolfelli certified as accurate, demonstrate that collateral was pledged to multiple lenders. *See, e.g.*, Chase Appellant R. 11, Ex. G.

The Court then focused on elements (2) and (3): whether the debtor knew the representations were false or acted with reckless disregard for the truth, and whether the debtor made the representations with intent to deceive. The Court noted that while fraud "supporting nondischargeability may not be implied in law, it may be inferred as a matter of fact." *In re Santos*, 304 B.R. at 665-66.

The Bankruptcy Court began its analysis by finding that although the creditors' allegations of fraud were not presumed true:

> the factual allegation that the Defendant pledged the same collateral to multiple lenders is accurate and well known to the Court through its handling of the bankruptcy proceedings. It is inconceivable that the Defendant's corporation could have pledge the same collateral to multiple lenders without knowing that it was acting with reckless disregard to the truth and without an intent to deceive its lenders . . . . Thus, under the totality of the circumstances, the Court may infer the presence of the Defendant's knowledge and intent to deceive the lenders.

*See* All Points Appellant R. 15, at 6; Chase Appellant R. 13, at 6; Provident Appellant R. 17, at 6. The Bankruptcy Court also specifically addressed Pandolfelli's argument that no misconduct

14

was alleged directly against him and that there was insufficient evidence linking him personally to any alleged misconduct stating:

> In truth, it ignores the obvious. The Defendant was the Chairman, Chief Executive Officer, and sole shareholder of RCA and would, or should, have been fully aware of all contracts and agreements the company entered into.

All Points Appellant R. 15, at 6. *See also* Chase Appellant R. 13, at 6; Provident Appellant R. 17, at 6 (reaching similar conclusions). In support of its conclusion that Pandolfelli was liable for the debts entered into by RCA, the Bankruptcy Court found that Pandolfelli could be liable for the debts of RCA on an alter ego theory of piercing the corporate veil. All Points Appellant R. 15, at 6*;* Chase Appellant R. 13, at 6; Provident Appellant R. 17, at 6.

Again, the Bankruptcy Court's conclusions were correct. The Bankruptcy Court based its conclusions on its extensive involvement with the RCA and Pandolfelli cases, and correctly inferred from Pandolfelli's control of RCA that he was aware of the frauds. Moreover, in each Complaint, the facts of which were deemed admitted, the Plaintiffs spelled out their allegations that Pandolfelli had converted RCA's assets by causing RCA to make payments for his own benefit. All Points App. R. 1, at ¶ 80; Chase App. R. 1, at ¶ 49; Provident App. R. 1, at ¶ 69. Further, the Bankruptcy Court's conclusion that Pandolfelli had used RCA to perpetrate a fraud was sufficiently established by the claims filed in the RCA bankruptcy, which Pandolfelli certified and which demonstrated that the same collateral was pledged to multiple creditors. *See* Chase Appellant R. 11, Exs. F-H.

### 2. The Damages are a Sum Certain

Pandolfelli's second contention—that the amount owed is uncertain—is also without merit. The court need not conduct a hearing as to damages if the damages are susceptible to computation. *Comdyne*, 908 F.2d at 1152 (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir.

1974)).  *See also Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) (holding that no damages hearing was necessary where the court "relied upon detailed affidavits and documentary evidence, supplemented by the District Judge's personal knowledge of the record").

Pandolfelli argues that the Creditors did not simply seek to recover a sum certain and that the supporting documents filed by the Creditors contained averments based on the unverified allegations of their adversary complaints and about which the declarants could not have had personal knowledge.  He further argues that the supporting documents lack detail and are insufficient to establish the amount owed.  In addition, with regard to the Provident action only, Pandolfelli contends there were inconsistencies in the amount Provident reported it was owed. Pandolfelli states that the Provident's Complaint sought to recover $4,059,447.28, while its Affidavit of Amount Owed stated that the claim was $1,675,857.90, and the bankruptcy court entered a judgment of $2,027,608.30.  However, as Provident explained in its Objection to Defendant's Motion to Vacate the Default Judgment, the affidavit in fact calculates judgment for $2,027,608.30, and the initial amount recited was merely a typographical error, Provident Appellant R. 11, at 3 n.2, and the amount in the complaint included loans not attributable directly to Pandolfelli's fraud, Provident Appellant R. 10 at 9, 19.

In the All Points and Provident proceedings, the amount owed was established by the affidavits and declarations submitted by each of the Creditors in support of the motions for default judgment.  All Points Appellant R. 9, Affidavit at 17-18; Provident Appellant R. 10, at 19.  Those affidavits demonstrate that the amounts owed are tied directly to Pandolfelli's fraud, because each claim arises from loans secured by collateral pledged to multiple creditors or from loans secured by supposedly outstanding leases made by RCA Capital for which there were in fact no leases receivable.  All Points Appellant R. 9, Affidavit at 11-18. Provident Appellant R.

10, at 12-19.  In the Chase proceeding, the claims are established by the proofs of claim filed in the RCA case, Chase Appellee R. 13 & 14, and Pandolfelli's bankruptcy, Chase Appellee R. 12.  In addition, counsel for Pandolfelli admitted to the Bankruptcy Court in a June 7, 2010 hearing that Pandolfelli did not dispute the amount of the claim.  Chase Appellee R. 13, at 10.

Moreover, the stipulation and consent order between the Creditors and the trustee in the RCA bankruptcy that granted relief to the Creditors from the automatic bankruptcy stay confirms the amounts of the secured allowed claims of Chase, All Points, and Provident, and lists the loans for which the securing collateral was pledged to multiple creditors.  Chase Appellee R. 17, Ex. A.  Above all, the Bankruptcy Court correctly relied on the schedules filed in the RCA bankruptcy, which established the debts owed to all three Creditors in these adversary proceedings, Chase Appellee R. 13 & 14, and which Pandolfelli swore, under penalty of perjury, to be true and accurate, Pandolfelli Declaration, Chase Appellee R. 15.

Because the unchallenged facts constituted a cause of action in each proceeding, and because the damages were adequately proven by the evidence, the Bankruptcy Court did not abuse its discretion when it entered default judgment without an evidentiary hearing.

## IV. CONCLUSION

For the reasons discussed above, the Court will deny Pandolfelli's appeals.  An appropriate Order will issue.

/s/ Faith S. Hochberg_____
Hon. Faith S. Hochberg, U.S.D.J.